Next case is In Re Hardy, case number 06-1153. Mr. Sedman, you may proceed. Well, may it please the Court, this is a basket case. And if you work on it long enough. No pun intended. No pun intended, pun intended. We have many fine arguments in the briefs, but I want to take about five minutes to talk about what I think is at the heart of this case. In order for the PTO to sustain its burden, it must present a prima facie case of obviousness. It can only do this by producing a so-called Rosen reference. Now, the PTO's Rosen reference is the Hardy basket, which I have brought to the argument, and it's marked number one. The commercial embodiment of the claim design is this basket, which I have marked number two. Now, In Re Rosen says that a proper Rosen reference is a single prior art reference, the design characteristics of which are basically the same as the claim design. The standard is basically the same. Now, everyone can see the differences between these two baskets. They are simply not basically the same. The claim design, basket number two, has inclined sidewalls, and the prior art basket, basket number one, has vertical sidewalls. Well, isn't it? To me, that's the only difference. In all other respects, they are not simply similar, but they're identical. Well, in all other respects, they are quite similar. They have the same diamond mesh on the side. They're identical, other than the size, but that's irrelevant. They're identical except for the tapered sides. Our position is that the claim design creates a different overall ornamental visual impression. Based upon the fact that the design in question has tapered sides and the reference does not. That's correct. This has vertical sides. This looks like a milk crate. This has open and extending sides. Well, I can understand your interest in characterizing these things, but let's talk about the facts and not put a gloss on things. If all elements of these two designs are identical except for the tapered sides, why don't we simply focus on that? Okay. I think I want to use a hypothetical, if I might, to demonstrate why I think these two designs are not basically the same. That's the standard. Suppose we got a design patent on the claim design, basket number two. Suppose this prior art basket did not exist but came on the market after we got our patent on basket number two. Suppose the owner of basket number two sued the maker of basket number one for design patent infringement. Now, the test for design patent infringement requires the accused basket number one to be substantially the same as the patented design, basket number two. This test, substantially the same, is, of course, from the 1871 Supreme Court case of Gorham v. White, still the law today. Now, the first thing what happened in this hypothetical case is, according to Markman, the court would construe the design patent claim of basket number two. And when they did that, there is no doubt in my mind that their claim construction would include the fact that the side walls in the claimed basket number two are slanted or inclined relative to the bottom wall. And there is also no doubt in my mind that after such a claim construction, the accused infringer could bring a successful motion for summary judgment of non-infringement because he would argue that the side walls of the accused basket number one are not inclined. In fact, they are vertical. And thus, no reasonable jury could conclude that the two designs are substantially the same in overall appearance. And I believe that this court, based on its case law, would likely affirm on appeal. I suppose that's why we're talking about a 103 rejection and not a 102 rejection. That's correct. Where does that get us in terms of the issue before us? Well, if the two designs are not substantially the same under Gorham, my position is simple. They cannot be basically the same under Rosen. And since they are not basically the same, we have no Rosen reference, and the Patent Office has failed to meet its prima facie burden. But Rosen doesn't require identity. No. It requires the prior art to be basically the same as the claim design. Not necessarily the same test as the test for infringement. Well, substantially the same, basically the same, it's really pretty much the crux of these two tests are actually identical. You know, I realize that the Gorham test is a test for infringement and the Rosen test is a test for obviousness. And obviously they're on different footings. The substantially the same test, the infringement test, is viewed through the eyes of an ordinary observer. While the basically the same test is viewed through the eyes of a designer of ordinary skill. But the people who apply these two tests are human beings. They're examiners and judges and juries. Nobody parades ordinary observers to the stand. Nobody parades designers of ordinary skill to the stand. They are both hypothetical people, very similar to a reasonably prudent man in negligence cases. But there's a fundamental difference, is there not, between the question of whether something infringes a design patent and whether something is a proper Rosen reference, a starting point reference for purposes of a 103 analysis. And in the latter case, in the 103 analysis, there would be necessarily some differences. Otherwise, it would be an anticipation rejection. Yes, but the test for determining whether you have a Rosen reference, it's an equivalence test. Just like the Gorham test for substantially the same incorporates an equivalency. Gorham does not say that the accused product has to be identical to the patented design. Those cases never make their way to court. Gorham is an equivalence, substantially the same test, basically the same. They're on the same, the heart of these two tests is similar. What would you say the standard of review is with respect to whether something is basically the same? A question of fact, of law, mixed fact law? I think it's mixed. Shouldn't some deference be given to the board below? Well, the question of fact, I mean, the prior art is the prior art. The claim design is the claim design. They are what they are. Certainly defer to that. But I think that legal error, which this court can review de novo, has been made in the misapplication of in re Rosen. And I also think, well, that's really the... If you say you could say reasonable people could differ on whether they're basically the same, wouldn't we defer? If there's some substantial basis for them saying it's basically the same? I think it's contrary to law. You know, if you want to know what basically the same really means, look at the designs involved in the in re Rosen case itself. They're presented on page 11 of our opening brief. The claim design was very simple. It was a round glass tabletop with legs that were at right angles, and it was transparent. And it's very similar in this case because the prior art was one of Rosen's own tables, the same inventor, just like we have the same inventor here. And you had the identical table legs, but you only had a semicircular top, and it was opaque. And this court in that case, well, it was the CCPA. They said that those two designs were not basically the same because they... I mean, if you look at the illustrations on page 11, you will see how extremely close they are. They're about the same closeness, I believe, as these two designs are. And the court in that case, and that's the standard, that's the in re Rosen, is where the phrase Rosen reference came from. So I think that gives us some guidance as to whether the patent office abused its discretion in finding that this was basically the same as the claim design. So you would say it was an abuse of discretion standard. Is that how we look at basically the same? I think it's a mixed question of law and fact. I mean, it's how close is it, which is kind of a question of fact. And then it's the proper application of the in re Rosen standard, the legal standard. Okay. So I'll reserve the rest of my time for rebuttal. So you defer that the secondary references were appropriately considered. The only issue is whether this is appropriate. No, no, no. This was well briefed. I think the secondary art was highly inadequate. I think all the secondary art showed was the concept of a basket with inclined sides. But this is not a utility patent case. We are not claiming to have invented that concept. What we are claiming is this specific design. And just because their secondary art that shows baskets with inclined sides does not preclude the patentability of a design of this particular basket with inclined sides. And that is established, well established, by not only Rosen but in Ray Cho and many subsequent cases. All right. Thank you. Thank you very much, Mr. Sedman. Mr. LaMarca. Just to start off, we've got a couple of disagreements. We think it is a finding of fact, you asked that question earlier, what a reference teaches. That's a finding of fact. And we believe the PTO gets deference on that, substantial evidence deference. And in this case, whether or not the prior art 302 reference, which is this exhibit right here, whether that qualifies as a Rosen reference, whether it teaches something that's basically the same as the claim design, we would argue that that is a finding of fact and that we do get deference on that finding. Number two, the embodiment of the invention that's displayed in this exhibit, this is not the claimed invention. This is a narrower version, something more narrow, more specific. The claimed invention is broader than that. And the claimed invention is shown in the drawings. And if you look at page four of our brief, on the facing page of four of our brief, it really shows a good comparison between the claimed invention and the 302 patent, which is what's displayed here, the square. And that really is the claimed invention being compared to the prior art. And remember, as Judge Lynn pointed out earlier, size is not a limitation in the claim. Therefore, since size is not a limitation, it's really not a fair comparison to what we see here, the differences in size. You have to imagine that these two things were the same exact size because the claim encompasses that variation in size. Accordingly, the picture that's shown on the facing page of page four of our brief is really the way to compare the claimed invention to the prior art. And that comparison really reflects or really, I think, it jumps off the page, and the board's finding is supported by that evidence, that that reference is nearly identical to the prior art. The claimed invention is near, except for the tapered size. That's the only missing element. But it wouldn't be infringing. Now, whether or not it qualifies as infringing or not is another question. But is that the same test? I don't think it's the same test. And why not? Well, first of all, once a court is evaluating infringement, there's a presumption of patentability that's already attached. When we're here at the Patent Office, we're evaluating a claim under the broadest reasonable interpretation. It's a completely different standard. So I don't think it's the same test. When we're evaluating whether or not this reference qualifies as a Rosen reference, whether it's basically the same, I don't think that that's the same test that takes place in the infringement context. And I think it's important to separate the two and to focus on the key issue in this case, which is the Rosen test. That's the standard, and that's what we're going by. And a good example of that is, and we cited in our brief, is the Borden case. And Borden actually says in it, it explains the test. It cites the Rosen case as the Rosen test, basically the same. And, in fact, Borden actually says what a reference teaches or what a prior art teaches is a question of fact. And at that time, I mean, they explained it's a question of fact. So I think it's not some mixed question. It's not a question of law. It's a factual finding. The board made it. The examiner made it. The evidence and record supports that, and we think that there's substantial evidence there that that finding of fact should be sustained. So that gets past the first hurdle. We've got a Rosen reference. The next step is, would it have been obvious then, in light of that reference that's very close to the claim to invention to begin with, what's out there in the prior art, is there something similar in the prior art, not identical but similar, that has this missing feature, and would an ordinary artisan or ordinary basket designer, would they have been motivated to make that alteration or make that change? And the board didn't cite one reference. They cited two references, both wire mesh baskets, both of similar type shape with this tapered side look. Both show that ordinary basket designers quite commonly and routinely taper the sides to baskets. And if you look at those baskets and compare them to the first prior art reference, those similarities is where design patent law says the suggestion comes from. Now, in addition to that, the board even went further. Not only did they find the similarity in the appearance and say that's where the suggestion is, that's where the motivation is, which is the standard way to do it in a design case, but the board went further, and the Pope reference, which was cited, had additional teachings saying when you've got a mesh basket, it's advantageous to taper the sides because you create this open top, this open larger size opening, and that helps with volumetric capacity or storage capability or getting things into the basket, whatever you're putting in there. In addition to that, which affirms that even more, if you look at the specification filed by the applicant, Hardy in this case, the specification even says the reason that they've tapered these sides on their claimed invention is to create an open top, an open look and feel. Well, that even suggests that even the applicant was somewhat motivated by that benefit of having an open larger top. So it's all consistent, and the evidence of record supports that, and we don't think that it's a tough question for this court to affirm the board. We think there's plenty of evidence in the record to support the findings made by the board and that they have followed the proper legal tests and that the board should be affirmed. And if there's no questions, I only have one final point that I'd like to make. No questions? We do still have a pending motion because photographs of these baskets were put into the reply brief, and that pending motion was to strike those photographs because we felt those photographs were evidence that the board never considered, evidence that it didn't have. In fact, this specific embodiment right here of the invention, which is a narrow version of the invention, actually was one of the embodiments proposed in the original application, and there was a restriction requirement, and it was non-elected, so it was taken out. Applicant expressly removed this embodiment from his application to potentially file in another divisional application, and now we've got it sitting here to compare to the claim to invention. We, the PTO, think that that photograph of that evidence should not be in the reply brief because of that reason. That's all. Thank you, Your Honor. Thank you. Mr. Sedman? Yes, sir. Have you heard anything that gave you pause? No, sir. Thanks for asking. I cannot bring a basket in here that has jagged lines around the handle, as in the claim design, because I would cut everybody who comes into contact with it. Well, let's see. These were not part of the record, correct? Not part of the record before the board? This is the... You mean these exhibits? These particular exhibits were not. And the photographs, likewise, were not? That's correct. Well, then, how are they proper before us? They are proper before you because they don't show anything more or less than what is already in the record. Well, then, why don't we just rely on what's in the record? Because the particular figures that the solicitor chose to illustrate in its brief do not properly, in my view, convey the essence of the prior art or the essence of the claim design. The solicitor chose perspective views only of the claim design and the prior art. And perspective views are well known to be distorted. And we have a front view and a side view. It's much easier, for example, to see the inclined walls of this basket head-on and to compare it with the vertical walls of this basket head-on than in a perspective view. So that's why... Is it true you'd withdrawn number two? Pardon me? You'd actually taken that back? Your brother mentioned that number two was actually removed from consideration. Oh, yes. You know, it was because it was a non-elected embodiment. But I have to say that, if anything, bringing exhibit number two into the courtroom as a visual aid helps the patent office because it looks a lot more like the prior art because the handles are identical. So I don't see where the prejudice is to the patent office. I mean, it's clear. This is the only commercial embodiment ever made. Well, they didn't show prejudice. I mean, is that the standard that you get to put in anything new that's not in the record because somebody hasn't shown that it's prejudice and you think it's not? Well, it's okay with me if we rely on the record, Your Honor, but I felt that... Why don't we... You've got less than two minutes left. Why don't you spend your time on the merits to the extent you have anything further? The patent office made the point that there is a presumption of validity on an issued patent, but that, of course, has nothing to do with the test for infringement, which is what I was talking about. Isn't the patent office correct, though, that the question of whether a reference is a Rosen reference is a question of fact? No, I think it's a mixed question of law and fact, Your Honor. I mean, the conclusion of obviousness certainly is a question of law, but... And the conclusion of whether a reference is a proper Rosen reference under the N. Ray Rosen standard is similarly a question of law. But the question of whether any reference is a proper reference is a question of fact, is it not? Everything in Graham v. John Deere is a mixed question of law and fact, so I think... Well, that's an overstatement. Well, I think that this case, N. Ray Rosen and the question of obviousness, are basically on the same footing as mixed questions. All right. Do you have anything further? Yes. I want to point out that the Pope prior art with the inclined sidewalls has completely different relative dimensions than the claim design. Not absolute because we don't claim size, but the Pope basket, not illustrated in the solicitor's brief, they only illustrated the end view of Pope. But if you look in the appellant's brief, you will see it's much, much longer than the claim design. And if you look at the Glassenburg patent, you will see that their basket is very, very squat. So none of the relative dimensions of the claim design appear in any of the prior art. Finally, I want to point, Your Honors, to the Durling case. Durling v. Spectrum Furniture. It's not in the brief, but it occurred to me as I was listening to the solicitor that is a beautiful 103 case where the claim construction from the district court on a sectional sofa, where they held the claimed sectional sofa to have been obvious in view of a prior art sectional sofa, was reversed by the Federal Circuit on the grounds that the district court's claim construction was too broad. All right. We understand your point. Your time has expired, and the case is submitted. Thank you very much. Thank you.